OPINION OF THE COURT
Kaye, J.
In their separation agreement, a husband and wife provided that the marital residence they owned as tenants by the entirety would, within four years, be sold at the prevailing market price, and the proceeds divided between them. Before termination of the marriage, and before any sale, the wife died. In this action by the administrators of her estate to recover half the proceeds from the subsequent sale of the house, we hold that the separation agreement did not transform the tenancy by the entirety to a tenancy in common and, consequently, the surviving husband alone is entitled to the proceeds.
*394 Angela and Anthony Violi owned their marital residence as tenants by the entirety. On June 24, 1980, they entered into a separation agreement, which provided that for up to four years, Angela would have exclusive possession of the residence and could determine if and when it would be sold. Three and a half years from the date of the separation agreement, if the house had not by then been sold, it was to be placed on the market, to be sold to the first bona fide purchaser offering the established market price.[1] On August 20, 1981, after a one-year separation pursuant to the agreement, Angela sued for divorce. Anthony did not contest the proceeding. However, before any divorce decree was signed by the court and before the residence was sold, on September 9, 1981 Angela died. Anthony sold the residence on January 15, 1982.
Plaintiffs, who are Angela’s parents and the administrators of her estate, commenced this action to recover half of the net proceeds from the sale of the house. The Surrogate denied their *395 motion for summary judgment, granted Anthony’s cross motion for summary judgment, and dismissed the complaint, ruling that the tenancy by the entirety had not been terminated and that Anthony alone owned the residence. The Appellate Division reversed, awarding plaintiffs half the proceeds, on the theory that the separation agreement created an “ ‘equitable if not express lien’” in favor of each spouse on half the sales proceeds. We now reverse and reinstate the Surrogate’s determination.
Where property is held in a tenancy by the entirety — in which a husband and wife own real property as if they were one person (see, Matter of Reister v Town Bd., 18 NY2d 92,95) — and one spouse dies, the surviving spouse takes the entire estate, not because of any right of survivorship, but because that spouse remains seized of the whole (see, Kahn v Kahn, 43 NY2d 203, 207; Stelz v Shreck, 128 NY 263, 266; Bertles v Nunan, 92 NY 152,156; 5A Warren’s Weed, New York Real Property, Tenancy by Entirety § 8.01, at 68-69). A tenancy by the entirety may, while both spouses are alive, be converted into a tenancy in common by certain definitive acts: a conveyance of the property in which both spouses join; a judicial decree of separation, annulment or divorce; or execution of a written instrument that satisfies the requirements of section 3-309 of the General Obligations Law,[2] which permits division or partition of real property held in a tenancy by the entirety if clearly expressed in such an instrument (see, Kahn v Kahn, 43 NY2d 203, 207, supra; see also, Lawriw v City of Rochester, 14 AD2d 13, 15-16, affd 11 NY2d 759).
At the time of Angela’s death, there was no conveyance of the property which had been joined in by both spouses, and no judicial decree of separation, annulment or divorce terminating the marriage. Nor was the separation agreement an instrument of partition or division under General Obligations Law § 3-309. The agreement at most constituted an executory contract to divide the proceeds when a sale occurred.
A tenancy by the entirety is not terminated merely by a provision in a separation agreement for the sale of a marital *396 home at a future date. In Matter of Maguire (251 App Div 337, 339, affd 277 NY 527), the court held that the death of a spouse after execution of a contract of sale, but before the date set for closing of title, did not create a right in the decedent’s heirs to a share of the proceeds. Rather, the surviving spouse remained seized of the whole estate in his capacity as the “entirety.” (Accord, Matter of Keyworth, 19 AD2d 688; Matter of McKinney, 175 Misc 377; cf. Matter of Schenk, 205 Misc 148.)
Given that an executory sales contract does not ordinarily constitute a partition or division of the property, it follows that an agreement to seek a buyer and convey the entirety’s interest at some time in the future does not transform the tenancy to one in common. Thus, in Schiller v Schiller (80 AD2d 164), a tenancy by the entirety was not affected by a separation agreément providing that one spouse would have exclusive possession of the marital residence until either she wanted the residence sold or she remarried or occupied the house with another man, and that on such sale the proceeds would be shared. Similarly, in Sterns v Stevans (20 Misc 2d 417, 418-419 [Meyer, J.]), an agreement to sell property held in a tenancy by the entirety “ ‘as quickly as practical at a price agreed upon by both parties, and [to divide equally] all money received’ ” did not constitute a partition or division under what is now General Obligations Law § 3-309.
That the separation agreement established both a time limit for the sale of the property and a mechanism for determining the minimum price does not elevate it to the status of an instrument to “make partition or division of*** real property” within the meaning of the General Obligations Law. There is no language in the agreement evincing an intent to alter the form of ownership. Nor does the provision in the separation agreement for the waiver and relinquishment of “any and all rights [each party] may now have or hereafter acquire * * * to share in the property of the estate of the other as a result of marriage” compel a contrary conclusion, since in the case of a tenancy by the entirety the estate of a deceased spouse would not in any event have an interest in the property.
In reaching this conclusion, we are mindful also of a public policy favoring certainty in title to real property, both to protect bona fide purchasers and to avoid conflicts of ownership which may engender needless litigation (see, Barkenthien v People, 212 NY 36, 44, rearg denied in opn 213 NY 554). As a general matter, title to estates in land should be altered only by clear expressions of intent. No such intent having been expressed *397 here, the tenancy by the entirety continued until the time of Angela’s death, when Anthony became sole owner of the property.
The Appellate Division’s imposition of an equitable lien on one half the proceeds (see also, Matter of Price, 56 Misc 2d 774, affd 33 AD2d 732) was in these circumstances an impermissible attempt to accomplish by indirection what could not be done directly. While a constructive trust may be imposed to prevent a wrongdoer’s unjust enrichment (see, 4A Powell on Real Property If 624, at 707), no wrongdoing is alleged here.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the order of Surrogate’s Court, Richmond County, granting defendant summary judgment and dismissing the complaint, reinstated.

. The separation agreement states:
“7. DWELLING: The parties acknowledge that they own as tenants by the entirety a house at 2118 Clove Road, Staten Island, New York, and that the wife is in possession of said house and shall remain in exclusive possession of said house for a period of four consecutive years, commencing with the execution of this Agreement. During the period of the wife’s exclusive possession she shall have the right to determine if and when said house will be sold, and the parties agree that the price at which the house shall be sold shall be at the prevailing market price established at that time. To establish the market price, each party shall have an appraisal performed by an independent appraiser doing business on Staten Island for a consecutive period of five (5) years at the time the appraisal is performed. The market price shall be determined by the average of the two appraisals, as performed by the parties’ independent appraisers. In the event that the wife decides to sell the house during the period of her exclusive possession, the husband shall be notified of such decision and shall have a period of 30 days from the time of such notification to a right of first refusal to purchase the house at the established market price.
“At the expiration of 3 years and 6 months from the execution of this Agreement, the parties agree that the house shall be put on the market for sale, at the market price as established supra. The parties agree to sell the marital residence to the first bona fide purchaser offering the market price, and the parties agree to cooperate fully in executing whatever documents that may be necessary to effectuate said sale. Upon the sale of the house at 2118 Clove Road, Staten Island, New York, whether to the other party, or to a third party, the husband and wife shall equally divide the equity and any net profits (after all expenses of the sale have been paid).
“Nothing herein contained shall be deemed to create a tenancy between the husband as landlord, and the wife, as tenant, but merely creates an exclusive possession of the premises to the wife, as a licensee, and the wife affirmatively covenants and agrees for herself, her heirs, administrators and assigns to promptly quit the premises immediately upon the date of closing for the sale of the house.”

. Section 3-309 of the General Obligations Law states: “Husband and wife may convey or transfer real or personal property directly, the one to the other, without the intervention of a third person; and may make partition or division of any real property held by them as tenants in common, joint tenants or tenants by the entireties. If so expressed in the instrument of partition or division, such instrument bars the wife’s right to dower in such property, and also, if so expressed, the husband’s tenancy by curtesy.”