Taglioni v Garcia (2021 NY Slip Op 05936)





Taglioni v Garcia


2021 NY Slip Op 05936


Decided on October 28, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 28, 2021
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Troy K. Webber
Anil C. Singh Saliann Scarpulla Manuel Mendez Julio Rodriguez III


Index No. 306925/17 Appeal No. 14299 Case No. 2021-01914 2021-01915 

[*1]Giambattista Taglioni, Plaintiff-Respondent,
v
Maria Chica Garcia, Defendant-Appellant.



Defendant appeals from an order of the Supreme Court, New York County (Michael L. Katz, J.), entered May 18, 2021, which, to the extent appealed from, directed the sale of the parties' jointly owned marital residence.




Mantel McDonough Riso, LLP, New York (Kevin M. McDonough of counsel), for appellant.
Rabin Schumann and Partners LLP, New York (Gretchen Beall Schumann and Laura T. Hedge of counsel), for respondent.



RODRIGUEZ, J. 


At issue on this appeal is whether the parties consented to the pendente lite sale of their jointly owned marital home, a townhouse located in Manhattan. There were preliminary discussions with Supreme Court at the January 28, 2021 and March 30, 2021 conferences to sell the townhouse for $6 million. However, the parties could not reach an agreement as to the material conditions for the sale. Nor did the wife or her attorney consent to the sale on the terms proposed by the husband. Accordingly, Supreme Court should not have ordered the sale of the townhouse.
As stated by this Court in Schorr v Schorr (106 AD3d 544, 544 [1st Dept 2013]), "It is well-settled that, prior to entry of a judgment altering the legal relationship between spouses by granting divorce, separation or annulment, courts may not direct the sale of marital property held by spouses as tenants by the entirety, unless the parties have consented to sell" (quoting Moran v Moran, 77 AD3d 443, 444 [1st Dept 2010]). Moreover, "courts must respect conditions placed on a party's consent to the sale of such property, and lack the authority to direct a sale where those conditions have not been met" (Harrington v McManus, 303 AD2d 368, 368 [2d Dept 2003]; see Kahn v Kahn, 43 NY2d 203, 209-210 [1977]; Kayden v Kayden, 234 AD2d 345 [2d Dept 1996]; Berk v Berk, 170 AD2d 564, 565 [2d Dept 1991]).
We find that the record "did not reflect a meeting of the minds and did not contain specific terms" (Schorr, 106 AD3d at 544; see Kahn, 43 NY2d at 209) sufficient to evince the wife's consent to the ordered sale. The record establishes that, contrary to the determination of the court below, the parties did not agree to listing their jointly owned townhouse at $6 million or to the sale of the townhouse. Although the parties identified targets of their negotiations, neither the wife nor her counsel ever explicitly agreed to the contemplated sale pendente lite. As indicated during the parties' conferences before the court and by the parties' competing proposed orders, the wife's negotiating targets remained at all times contingent on stipulation of other disputed material terms.
At the January 28, 2021 status conference, the wife's attorney described her position, in relevant part:
"So, to be clear, our client at the end of this case, she is agreeing, she's not planning on keeping this family townhome. She has no intention of keeping it. Her concern is that this litigation is going to go on for another couple of years minimally, and that essentially she [*2]needs a place to live with her daughters . . . . So what we're proposing is, is that if this townhouse is sold on a pendente lite basis, that plaintiff [husband] as the monied spouse should pay for a reasonable rental for our client in Manhattan"
(emphasis added). Although the wife's counsel stated that she "will speak with my client about what the Court just suggested about the proceeds," there is no suggestion in the record that the parties agreed to or ever attempted to negotiate the "reasonable rental" condition proposed by the wife's counsel. After multiple exchanges between the judge and counsel, Supreme Court unilaterally stated that the terms of the sale were as follows: "[The husband] wants this townhouse, and I already said I think this townhouse needs to go on the market 30 days after these repairs are done, so I think your client [the wife] should agree to that." Notably, the wife, by her counsel, did not assent to this term.
At the March 30, 2021 status conference, the parties indicated that little progress had been made. Early in the conference, the husband's counsel stated: "We had prepared a stipulation. We have now learned that the problem is that [the wife] has no intention of selling the townhouse and that she has changed her position." Significantly, the record contains no executed stipulation by the parties or their attorneys to sell the townhouse.[FN1]
Rather, following the March 30, 2021 status conference, the parties submitted, at the direction of the court, competing proposed orders. The husband's proposed order contained many of the conditions imposed by Supreme Court in the order on appeal, including scheduled mandatory price reductions and required acceptance of certain offers. The wife's proposed counter order, on the other hand, contained no proposed initial list price, no procedure for list price reduction or reevaluation, and no required acceptance of offers at any price level. As to a potential sale, the wife's proposed counter order provided that the property "should either be listed for sale or the Wife shall advise the Husband in writing that she intends to buy-out his interest in the Townhouse" and, further, that "[t]he Townhouse will only be sold under the terms of an agreed Stipulation between the parties."
The order on appeal reflects that Supreme Court adopted the husband's order with minimal revisions, essentially rejecting the wife's preconditions to the sale of the townhouse and imposing its own additional conditions. The dissent faults the wife's attorney for not raising the issue of the sale of the townhouse being conditioned on the husband paying for a "reasonable rental" at the March 30 conference. However, that issue was expressly raised at the January 28 conference and was never resolved, evincing that there was never a meeting of the minds on the material terms of the sale. The husband's counsel acknowledged the parties' differences when counsel informed the court that they had "now [*3]learned that the [wife] has no intention of selling the townhouse and that she has changed her position." Thus, even assuming arguendo that the dissent is correct that the wife initially agreed to the sale of the townhouse, she revoked her consent because the parties were unable to agree on the material terms of the sale (see Harrington, 303 AD2d at 368-369.)
Additionally, the court erred in imposing conditions on the sale of the property that were not discussed or agreed to on the record, namely, that the townhouse be listed before the repairs were made, that the price be reduced in specified amounts at set dates, and that the parties accept a purchase price offer of 95% or more of the list price (see Harrilal v Harrilal, 128 AD2d 502, 503-504 [2d Dept 1987]).
Finally, we have already rejected the husband's argument that the appeal should be dismissed because the wife is not aggrieved; in a prior order, we denied the husband's motion to dismiss the appeal on that basis. In any event, the argument is unavailing. The order, which largely tracked the husband's proposed order, adversely affected the wife's interests.
Accordingly, the order of the Supreme Court, New York County (Michael L. Katz, J.), entered May 18, 2021, which, to the extent appealed from, directed the sale of the parties' jointly owned marital residence, should be reversed, on the law and the facts, without costs, and the ordered listing and sale rescinded in its entirety.
All concur except Webber, J.P. and Scarpulla, J. who dissent in part in a separate Opinion by Webber, J.P.




Webber, J.P. (dissenting in part)
 

I agree that Supreme Court erred in imposing additional conditions on the sale of the marital townhouse that were not discussed or agreed to on the record, namely, that the townhouse be listed before the repairs were made, that the price be reduced in specified amounts at set dates, and that the parties accept a purchase price offer of 95% or more of the list price (see Harrilal v Harrilal, 128 AD2d 502, 503-504 [2d Dept 1987]).
However, I disagree with the majority that the record "did not reflect a meeting of the minds and did not contain specific terms" to evince the wife's consent to the sale of the jointly owned townhouse, which was the marital residence (see Kahn v Kahn, 43 NY2d 203 [1977]; Schorr v Schorr, 106 AD3d 544 [1st Dept 2013]). In my opinion, a review of the record as a whole establishes that the parties agreed to sell the townhouse pendente lite, for a list price of $6 million within 30 days of the completion of the necessary repairs. The plan was articulated by the wife's attorney during the January 28, 2021 status conference. At that conference, the wife's attorney stated that her client was prepared to immediately do the repairs that the brokers had recommended.
"The court: But all I'm saying if the plan is to sell the townhouse, we know that kind of a niche market that sometimes you don't just have an open house and necessarily get an [*4]offer that minute. It has to be marketed a certain way. It doesn't make sense to get that process going and . . . . money can be put in escrow. There is a support issue in a support order in effect and I just don't know if it makes sense to delay that.
Ms. Schanfield: I understand, your honor. Our client is prepared to immediately do the repairs that the brokers had recommended."
Her acknowledgment that she was prepared to go forward with the repairs recommended by the brokers confirms her acquiescencein the sale of the townhouse (see Frisina v Frisina, 178 AD2d 460, 460 [2d Dept 1991]).
This was further confirmed by the husband's attorney, who stated that the parties had a deal, and that the repairs were the issue that was holding the parties back. Although the wife now contends that her agreement to the sale of the townhouse was conditional on the husband paying for her Manhattan rental, she failed to engage in any discussion of this issue on the record and made no mention of it during the March 30, 2021 conference. While the majority notes that during the January 28, 2021 status conference, the wife's attorney described her position, "that if this townhouse is sold on a pendente lite basis, that plaintiff [husband] as the monied spouse should pay for a reasonable rental for our client in Manhattan," the majority ignores what preceded the noted quote:
"So, to be clear, our client at the end of this case, she is agreeing, she's not planning on keeping this family townhome. She has no intention of keeping it. Her concern is that this litigation is going to go on for another couple of years minimally, and that essentially she needs a place to live with her daughters . . . . (emphasis added) So what we're proposing is, is that ifthis townhouse is sold on a pendente lite basis, that plaintiff [husband] as the monied spouse should pay for a reasonable rental for our client in Manhattan."
Thus, counsel was raising the wife's concern of being without a residence should the litigation continue for a number of years and not that she did not agree to the sale of the townhouse.
The majority also incorrectly asserts that there is no suggestion in the record that the parties agreed to or ever attempted to negotiate the "reasonable rental" condition proposed by the wife's attorney. However, if theparties had not agreed to or negotiated this condition, the wife's attorney never stated thaton the record. Rather, on March 30th, counsel asserted that there was water damage in the townhouse, that the wife had consented to manage the repairs if she had access to the monies, that the husband was not releasing the monies, that there was a history of the wife not being reimbursed, and that the new insurance policy was inadequate. Clearly, if the "reasonable rental" condition was still an issue, counsel would have argued on March 30th that the parties did not agree or negotiate the "reasonable rental" condition. Instead, counsel stated that circumstances [*5]had changed because the children "had no place to go" and not because of any issue with the "reasonable rental" condition.
Further, during the March 30, 2021 conference, the court specifically reiterated the previously agreed upon sale of the townhouse.
"So I know that I've read the transcripts over this morning and we talked about necessary repairs to the townhouse and we [sic] very specific necessary repairs meant repairs that the broker said needed to be done, and Ms. Garcia was going to contact the workers to do it, she was going to obtain written estimates and forward them to Mr. Taglioni, and then we came to an understanding if any of the work turned out to be more than ten percent above the estimate, then Ms. Garcia was going to forward that documentation to Mr. Taglioni so he could have input and approve it. And then within 30 days after that, the townhouse was going to go up for sale."
The court closed the conference with the following statement:
"That's another issue that was discussed ad nauseum and it should get done. I mean, the point of these conferences is not to go backwards, it's to go forwards. So the deal was that there was going to be a buyout of East Hampton, the deal was the townhouse was going to be sold after necessary repairs. The deal was that the Chubb monies were going to be used for the repairs of the townhouse. There's no reason to keep on revisiting these issues, just get it done."
Neither the wife nor her counsel challenged this assertion, in fact, counsel thanked the judge. Finally, in her proposed counter order, the wife never offered any alternative terms regarding the listing and sale of the townhouse, nor did she state any objections to the sale. Upon review of the terms set forth in the husband's proposed order, she neither suggested any different terms regarding the listing and sale of the townhouse in her counter order or objected to the sale of the townhouse.
While the majority points to the wife's inclusion in the counter order of a statement that the sale of the townhouse would be pursuant to the terms of an agreed stipulation between the parties as an indication of disputed material terms, such a conclusion is not supported by the record as a whole. Further, as noted by the husband, any proposed terms of a proposed stipulation, if different from the proposed order, would properly be presented in the counter order.
For the reasons stated above, in my opinion, Supreme Court properly implemented the parties' contemplated agreement as to the sale of the townhouse (see Kahn v Kahn, 43 NY2d at 210).
Order, Supreme Court, New York County (Michael L. Katz, J.), entered May 18, 2021, reversed, on the law and the facts, without costs, and the ordered listing and sale rescinded in its entirety.
Opinion by Rodriguez, J. All concur except Webber, J.P. and Scarpulla, J. who dissent in a separate Opinion by Webber, J.P.
Webber, J.P., Singh, Scarpulla, Mendez, Rodriguez, JJ.
THIS CONSTITUTES THE [*6]DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: October 28, 2021



Footnotes

Footnote 1: The dissent refers to the court's "specific[] reiterat[ion]" of "the previously agreed upon sale of the townhouse" during the March 30, 2021 conference. Although the court indeed referred to what "the deal was," the full context of the record shows that this phrase referred not to any concrete agreement but to the court's desire for resolution.